**FOX INTERNATIONAL RELATIONS, Michael Lisitsa, and Natan Lisitsa, Plaintiffs,**

**v.**

**FISERV SECURITIES, INC., Eric Laucius, Michael Kogan, Ilya Zamarin, First Security Investments, Inc., and Does I–III, Defendants.**

**Gene Sterin and Flora Sterin, H/W, Plaintiffs,**

**v.**

**Fiserv Securities, Inc., Eric Laucius, Michael Kogan, and Does I–II, Defendants.**

**Civil Action Nos. 04–5877, 05–1559.**

United States District Court, E.D. Pennsylvania.

March 20, 2007.

As Amended May 7, 2007.

David P. Temple, James Hickey, John Joseph Gallagher, Law Offices of John J. Gallagher, P.C., Philadelphia, PA, for Plaintiffs.

David Eric Robinson, Glenn A. Weiner, Michael K. Coran, Klehr Harrison Harvey Branzburg & Ellers, L.L.P., Lathrop B. Nelson, III, Montgomery McCracken Walker and Rhoads, L.L.P., Steven L. Bloch, Berger & Montague, P.C., Brian Patrick Seaman, Stradley Ronon Stevens & Young, Philadelphia, PA, Margaret Manolakis, Stradley, Ronon, Stevens & Young, LLP, Malvern, PA, for Defendants.

### *MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION

On September 18, 2003, defendant Michael Kogan ("Kogan"), an unlicensed securities broker, pled guilty to several counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. On Janu-

ary 22, 2004, Kogan was sentenced to, *inter alia*, 87 months imprisonment, 3 years supervised release, restitution of $5,655,350.18, and a special assessment of $1,800. *United States v. Kogan*, C.R. No. 03–306 (E.D.Pa. Jan. 22, 2004); *see also Kogan v. Lindsay*, 2006 WL 1548855, *1 (M.D.Pa. May 31, 2006). Kogan is currently incarcerated in the United States Penitentiary, Canaan in Waymart, Pennsylvania.

Arising out of Kogan's fraud are two similar lawsuits presently before this Court: *Fox International Relations v. Fiserv Securities, Inc.* (C.A. No. 04–5877) and *Sterin v. Fiserv Securities, Inc.* (C.A. No. 05–1559).[1] Plaintiffs in *Fox International Relations* are Fox International Relations, Michael Lisitsa, and Natan Lisitsa; plaintiffs in *Sterin* are Gene Sterin and Flora Sterin (collectively "plaintiffs"). Plaintiffs allege violations of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 10b–5, the Pennsylvania Securities Act ("PSA"), common law fraud, breach of fiduciary duty, and negligent supervision.

Presently before the Court are four motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants Laucius and Fiserv in *Fox International Relations* and *Sterin*. For the reasons set forth below, each of the motions to dismiss is granted in part and denied in part.

## II. FACTUAL BACKGROUND

The following facts are taken from the Third Amended Complaint in *Fox International Relations*, the Second Amended Complaint in *Sterin*, or are matters of public record.[2] All facts are presented in the light most favorable to plaintiffs. This Memorandum sets forth only the factual allegations necessary to explain the Court's ruling.

### A. Allegations Against Defendant Kogan

Plaintiff Fox International Relations is a Pennsylvania partnership that invested money borrowed from "friends and associates." *Fox*, Third Am. Compl. at 3, 7.[3] Plaintiffs Michael Lisitsa and Natan Lisitsa are managing general partners in Fox International Relations. *Id.* at 3. In August 1996, Fox International Relations, Michael Lisitsa, and Natan Lisitsa, began making investments with defendant Kogan. *Id.* at 5. At that time Kogan was employed by Jefferson Gersch, a brokerage firm. *Id.*

In January 2000, the National Association of Securities Dealers suspended Kogan's brokerage license for improperly

1. These are not the only civil cases to arise out of Kogan's illegal activity. *See Nisenzon v. Morgan Stanley DW, Inc.*, 2007 WL 172378, *1 (E.D.Pa. Jan.18, 2007); *Alexander Finance C.D., Inc. v. Sirotovsky*, 2004 WL 1552001, *1 n. 1 (E.D.Pa. July 9, 2004).

2. Generally, a court may not consider documents outside of the pleadings when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). However, there is an exception to this general rule for matters of public record and prior judicial proceedings, which may be relied upon by the Court without converting a motion to dismiss into one for summary judg-

ment. *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 292–93 (3d Cir.1999). In this case, defendant Fiserv has appended to its Motions a "Clearing Agreement" dated November 5, 1999. *See Fox*, Mot. of Def. Fiserv to Dismiss Third Am. Compl. Ex. A; *Sterin*, Mot. of Def. Fiserv to Dismiss Second Am. Compl. Ex. A. The Court will not consider this document in ruling on the instant motions to dismiss.

3. The Court cites to plaintiffs' Third Amended Complaint in *Fox International Relations*. by page number because the paragraphs in that document are incorrectly numbered.

transferring a customer account and forging a customer signature. *Fox*, Third Am. Compl. at 4; *Sterin*, Second Am. Compl. ¶¶ 18–19. Plaintiffs did not know that Kogan's license was suspended. *Fox*, Third Am. Compl. at 4; *Sterin*, Second Am. Compl. ¶ 18. At the time his license was suspended, Kogan was working for Jefferson Gersch. *Fox*, Third Am. Compl. at 4; *Sterin*, Second Am. Compl. ¶¶ 18–19.

After his license was suspended, Kogan began to work for the Penn Financial Group ("PFG"), a "brokerage firm." *Fox*, Third Am. Compl. at 3, 6; *Sterin*, Second Am. Compl. ¶¶ 11, 19. Defendant Laucius was the president and majority shareholder of PFG. *Fox*, Third Am. Compl. at 3; *Sterin*, Second Am. Compl. ¶ 9.

Defendant Fiserv, "a registered broker/dealer,"[4] was a clearing broker[5] for PFG. *Fox*, Third Am. Compl. at 3–4, 7–8; *Sterin*, Second Am. Compl. ¶¶ 11, 30. As the clearing broker, Fiserv held and processed brokerage accounts for PFG, executed securities trades, transferred or wired funds into and out of accounts, and processed deposits and withdrawals. *Fox*, Third Am. Compl. at 4, 7–8; *Sterin*, Second Am. Compl. ¶¶ 11, 30. In addition, Fiserv caused account "statements to be sent to PFG's clients reflecting activity on the account[s]." *Fox*, Third Am. Compl. at 4, 8; *Sterin*, Second Am. Compl. ¶¶ 11, 30.

After Kogan joined PFG, plaintiffs Fox International Relations, Michael Lisitsa, and Natan Lisitsa began making investments through Kogan and PFG.[6] Gene Sterin and Flora Sterin began making investments through Kogan and PFG in December 2000. *Sterin*, Second Am. Compl. ¶¶ 17, 23.

All plaintiffs invested money through Kogan and PFG by writing checks directly to Fiserv. *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 23. Their purpose was to buy and sell securities "with the ultimate goal of maximizing investment profit." *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 23.

However, Kogan illegally transferred plaintiffs' money into other accounts. These accounts were owned or controlled by Kogan or by his wife. *Fox*, Third Am. Compl. at 8; *Sterin*, Second Am. Compl. ¶ 32.

To avoid detection Kogan changed plaintiffs' customer address accounts at Fiserv "to various unknown addresses." *Fox*, Third Am. Compl. at 7–8; *Sterin*, Second Am. Compl. ¶¶ 29, 38. As a result of these changes, Fiserv mailed plaintiffs' account statements to incorrect addresses. These account statements were "frequently re-

---

**4.** Under federal law, a "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). A "dealer" is "any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A).

Under Pennsylvania law, a "broker-dealer" is "any person engaged in the business of effecting transactions in securities for the account of others or for his own account." 70 P.S. § 1–102(e).

**5.** "Clearing brokers" or "clearing firms" relieve brokerage firms, such as [PFG] of the huge costs associated with 'back-office'

operations ... The brokerage firm typically is known as the 'introducing firm,' and the clearing firm handles the 'mechanical, record-keeping functions related to the clearance and settlement of various transactions' in the accounts of the introducing firm's customers.
*Dillon v. Militano*, 731 F.Supp. 634, 636 (S.D.N.Y.1990) (citing *Lester v. Basner*, 676 F.Supp. 481, 482 (S.D.N.Y.1987)).

**6.** Fox International Relations, Michael Lisitsa, and Natan Lisitsa began making investments through Kogan and Jefferson Gersch in 1996. *Fox*, Third Am. Compl. at 5. The filings do not specify when these plaintiffs began making investments through Kogan and PFG.

turned" to Fiserv as undelivered. *Fox*, Third Am. Compl. at 8; *Sterin*, Second Am. Compl. ¶¶ 38–39.

In place of the misdirected Fiserv account statements, Kogan mailed plaintiffs fake monthly statements himself. *Fox*, Third Am. Compl. at 7; *Sterin*, Second Am. Compl. ¶ 26.[7] The statements sent by Kogan "were not reflective of the true status of [plaintiffs'] investment portfolio." *Fox*, Third Am. Compl. at 17; *Sterin*, Second Am. Compl. ¶ 80. In many cases, plaintiffs' Fiserv accounts contained "little to no funds." *Fox*, Third Am. Compl. at 7; *Sterin*, Second Am. Compl. ¶ 26.

On February 11, 2003, an arrest warrant was issued for Kogan for illegal activity related to plaintiffs' allegations. *Fox*, Third Am. Compl. at 10; *Sterin*, Second Am. Compl. ¶ 48. Laucius and PFG discontinued their brokerage business in March 2003. *Fox*, Third Am. Compl. at 10; *Sterin*, Second Am. Compl. ¶ 49.

**B. Allegations Against Defendant Laucius**

Defendant Laucius knew that Kogan's brokerage license was suspended when Laucius hired Kogan to work for PFG. *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶¶ 19, 20. Laucius also knew that Kogan was having "problems" with some of his accounts, "specifically,

false account statements, returned mail for accounts with bad addresses, and missing quarterly account statements." *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 21.

Nevertheless, Laucius gave Kogan the Fiserv software, account number, and password so that Kogan could sign into the Fiserv program from Kogan's computer to execute trades in customer accounts. *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 23.[8] Laucius also allowed Kogan to sign Laucius' name on journal entries for Fiserv. *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 22.[9] In short, Kogan was given full, unsupervised access to process daily trades with Fiserv. *Fox*, Third Am. Compl. at 9; *Sterin*, Second Am. Compl. ¶ 41.

Further, Laucius "was involved in the drafting, producing, reviewing or supervising the false and misleading statements" sent by Kogan. *Fox*, Third Am. Compl. at 5; *Sterin*, Second Am. Compl. ¶¶ 13, 14. These false account statements were "generated from PFG" and sent "through PFG and Defendant Eric Laucius." *Fox*, Third Am. Compl. at 17; *Sterin*, Second Am. Compl. ¶ 80. Laucius also knew that Kogan received large deliveries of blank paper, similar to paper used by Fiserv. *Fox*, Third Am. Compl. at 7; *Sterin*, Second Am. Compl. ¶ 27.[10]

---

7. Fox International Relations, Michael Lisitsa, and Natan Lisitsa received monthly statements from Kogan between 1996 and the first quarter of 2003. *Fox*, Third. Am. Compl. at 7. Gene Sterin and Flora Sterin received monthly statements from Kogan between 2000 and the first quarter of 2003. *Sterin*, Second Am. Compl. ¶ 26.

8. Kogan maintained an office at 201 Old York Road, Suite 621 in Jenkintown, Pennsylvania. *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 24. Kogan's office was directly across from Suite 633, the office of PFG. *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 24. "[A]ll persons affiliated with

PFG, Eric Laucius, and Michael Kogan believed that Suites 621 and 633 were run as one office under PFG." *Fox*, Third Am. Compl. at 7; *Sterin*, Second Am. Compl. ¶ 25.

9. In addition, "Fiserv provided Kogan with applications for plaintiffs to execute and also provided him with brochures detailing the employment of Fiserv as a valuable resource." *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 22.

10. In *Fox International Relations*, but not *Sterin*, plaintiffs allege that Laucius assisted Kogan in creating a false internet site for plaintiffs to check the status of their accounts with

## C. Allegations Against Defendant Fiserv

Fiserv "was fully aware" that Kogan was an unlicensed broker. *Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶ 42. Yet Kogan was "given full access by Fiserv and PFG to process daily trades with Fiserv, including unsupervised access to passwords and security functions." *Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶ 41. As a result, Kogan executed the purchase and sale of securities through PFG and cleared the transactions through Fiserv on a daily basis. *Fox,* Third Am. Compl. at 3, 6; *Sterin,* Second Am. Compl. ¶¶ 10, 24.

Defendant Fiserv was "entrusted with the control of plaintiffs [sic] investment portfolios." *Fox,* Third Am. Compl. at 16; *Sterin,* Second Am. Compl. ¶ 76. However, Fiserv permitted Kogan "to make trades and changes" in plaintiffs' accounts without power of attorney or letter of authorization. *Fox,* Third Am. Compl. at 8; *Sterin,* Second Am. Compl. ¶ 33. Ordinarily, Fiserv "requires a letter of authorization for check deposits, wire transfers, and journal entries, when funds are being transferred or deposited into accounts other than those whose names are on the checks." *Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶ 44.

"On several occasions Fiserv shut down trading accounts that were operated by Kogan for various trading violations," but permitted Kogan to open other trading accounts shortly thereafter. *Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶ 43.[11] Nor did Fiserv investigate any of the following trading activity by Michael Kogan:

multiple change of customer address requests by Michael Kogan, multiple transfer [sic] of funds between separately owned accounts by Michael Kogan, multiple deposits of funds in accounts titled in names other than the check writers by Michael Kogan, various trading violations by Michael Kogan ... and the fact that all of these functions were being performed by Michael Kogan when he did not have a brokers license.

*Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶ 46. Fiserv did not follow up on account statements that were returned in the mail. *Fox,* Third Am. Compl. at 9–10; *Sterin,* Second Am. Compl. ¶ 46.[12]

## III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiffs. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *In re Merck & Co., Inc. Sec. Litig.,* 432 F.3d 261, 266 (3d Cir.2005); *Lum v. Bank of America,* 361 F.3d 217, 223 (3d Cir.2004). Claims in a complaint will be dismissed only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

---

PFG. "This internet site never reflected the correct values of any of the investments in Plaintiffs [sic] accounts." *Fox,* Third Am. Compl. at 7.

**11.** Laucius was aware of these trading violations. *Fox,* Third Am. Compl. at 10; *Sterin,* Second Am. Compl. ¶ 47.

**12.** More generally, plaintiffs allege that Fiserv "had the power to influence and control and did influence and control, directly or indirectly, the decision making of [PFG], including the content and dissemination or omission of statements which Plaintiffs content were false and misleading." *Fox,* Third Am. Compl. at 23; *Sterin,* Second Am. Compl. ¶ 131.

*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## IV. DISCUSSION: LAUCIUS' MOTIONS TO DISMISS

Currently before the Court are two motions to dismiss filed by defendant Laucius in *Fox International Relations* and *Sterin*. Because the motions to dismiss are substantively identical, the Court addresses them as one in this memorandum.

In his motions to dismiss, defendant Laucius seeks to dismiss the following claims: (1) violations of Section 10(b) of the Exchange Act and Rule 10b–5; (2) violations of Section 20(a) of the Exchange Act; (3) violations of Sections 1–301, 1–306, 1–401, and 1–403 of the PSA; (4) violations of Section 1–501 of the PSA; and (5) common law fraud and breach of fiduciary duty. The Court addresses each claim in turn.

### A. Laucius' Motions to Dismiss Are Denied as to Plaintiffs' Claims Under Section 10(b) of the Exchange Act and Rule 10b–5

In Claims 8 and 18 of the Third Amended Complaint in *Fox International Relations* and Claims 7 and 17 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Section 10(b) of the Exchange Act.[13] In Claim 18 of the Third Amended Complaint in *Fox International Relations* and Claim 17 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Rule 10b–5. For the reasons set forth below, defendant Laucius' motions to dismiss are denied as to these claims.

### 1. Legal Standard: Section 10(b) of the Exchange Act and Rule 10b–5

Section 10(b) of the Exchange Act makes it unlawful to:

use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5 makes it unlawful for any person to: "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading ..." 17 C.F.R. § 240.10b–5(b).

Section 10(b) and Rule 10b–5 "should be 'construed not technically and restrictively', but flexibly to effectuate" a philosophy of full disclosure in the securities industry. *Securities and Exchange Commission v. Zandford*, 535 U.S. 813, 819, 122 S.Ct. 1899, 153 L.Ed.2d 1 (2002) (citations omitted); *see also Securities and Exchange Commission v. J.W. Barclay & Co.*, 442 F.3d 834, 840 (3d Cir.2006).

Section 10(b) and Rule 10b–5 provide a private right of action. *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 147 (3d Cir.2004) ("10(b) is enforced through Rule 10b–5, which creates a private cause of action for investors harmed by materially false or misleading statements."); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1417.

To prevail on a claim of primary liability under Section 10(b) and Rule 1 0b–5, a plaintiff must show: (1) a material misrepresentation or omission; (2) with scienter, i.e., a wrongful state of mind; (3) made in connection with the purchase or sale of a security; (4) reliance; (5) economic loss;

---

**13.** In their two complaints, plaintiffs entitle the enumerated counts "Claims."

and (6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341–42, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); *see also In re Goodyear Tire & Rubber Co.*, 1993 WL 130381, *4 (E.D.Pa. Apr.22, 1993).

Claims under Section 10(b) and Rule 10b–5 must also comply with heightened pleading standards under the Private Securities Litigation Reform Act (the "Reform Act"). The Reform Act requires a plaintiff to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). As to scienter, the Reform Act provides:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2). A court must dismiss those claims that fail to meet these heightened pleading requirements. *In re Alpharma Inc. Sec. Litig.*, 372 F.3d at 148; *see also* 15 U.S.C. § 78u–4(b)(3)(A).

In addition to complying with the Reform Act, claims under Section 10(b) and Rule 10b–5 must satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006).[14] Under Rule 9(b), a plaintiff must plead "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where, and how' of the events at issue." *In re Alpharma Inc. Sec. Litig.*, 372 F.3d at 148 (quoting *In re Burlington Coat Factory Securities Litig.*, 114 F.3d at 1422); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d at 534 (applying this standard to the Reform Act). Plaintiffs may satisfy Rule 9(b) "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum*, 361 F.3d at 223–24 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)).

## 2. Laucius' Motions to Dismiss: Section 10(b) and Rule 10b–5 Claims

In his motions to dismiss, defendant Laucius does not argue that plaintiffs have failed to allege scienter, reliance, causation or damages under Section 10(b) and Rule 10b–5. Rather, defendant Laucius asserts that plaintiffs (1) do not plead fraud "in connection with" the purchase or sale of securities, and (2) do not plead fraud with particularity as required under the Reform Act and Rule 9(b). The Court disagrees.

In *Zandford*, the Supreme Court unanimously held that fraud "in connection with" the purchase or sale of securities need not involve "misrepresentation about value of a particular security." 535 U.S. at 820, 122 S.Ct. 1899. Rather, a broker's

---

**14.** Rule 9(b) requires that, when a plaintiff makes allegations of fraud, "the circumstances constituting fraud ... shall be stated with particularity" but "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). However, the Reform Act conflicts with and supersedes that provision of Rule 9(b) that allows state of mind to be averred generally. *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 531 n. 5. Thus, plaintiffs stating claims under Section 10(b) and Rule 10b–5 must plead state of mind with particularity. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 276.

alleged sale of a client's securities with the undisclosed intent to misappropriate the proceeds constitutes fraud "in connection with" the purchase or sale of securities under Section 10(b) and Rule 10b–5. *Id.* In short, "it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 126 S.Ct. 1503, 1513, 164 L.Ed.2d 179 (2006).

▇ In this case, plaintiffs provide numerous, detailed allegations of fraud "in connection with" the purchase or sale of securities. Among these allegations are the following:

i. Plaintiffs made "investments through PFG and Michael Kogan by writing checks directly to Fiserv for the purpose of buying and selling securities." *Fox,* Third Am. Compl. at 6–7; *Sterin,* Second Am. Compl. ¶ 23.

ii. Laucius knew that Kogan's brokerage license was suspended, when Laucius hired Kogan to work for PFG. *Fox,* Third Am. Compl. at 6; *Sterin,* Second Am. Compl. ¶¶ 19, 20.

iii. Laucius let Kogan sign Laucius' name on journal entries for Fiserv. *Fox,* Third Am. Compl. at 6; *Sterin,* Second Am. Compl. ¶ 22.

iv. Laucius gave Kogan the Fiserv software, account number, and password so that Kogan could sign into the Fiserv program from Kogan's computer to execute trades in customer accounts. *Fox,* Third Am. Compl. at 6; *Sterin,* Second Am. Compl. ¶ 23.

v. Kogan "through PFG and Defendant Eric Laucius sent statements generated from PFG to [plaintiffs], which were not reflective of the true status of their investment portfolio." *Fox,* Third Am. Compl. at 17; *Sterin,* Second Am. Compl. ¶ 80.

vi. Laucius "was involved in the drafting, producing, reviewing or supervising the false and misleading statements." *Fox,* Third Am. Compl. at 5; *Sterin,* Second Am. Compl. ¶¶ 13, 14.[15]

Based on these allegations, the Court concludes that plaintiffs allege fraud "in connection with" the purchase or sale of securities. "This is not a case in which, after a lawful transaction had been consummated, a broker decided to steal the proceeds and did so ... Rather, [the] fraud coincided with the sales [and purchases] themselves." *Zandford,* 535 U.S. at 820, 122 S.Ct. 1899.

▇ The Court further concludes that plaintiffs allege fraud with particularity under the Reform Act and Rule 9(b). Although plaintiffs' allegations do not provide specific date, time and place descriptions of each alleged misrepresentation, they sufficiently identify the fraudulent schemes "in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum,* 361 F.3d at 223–24 (citation omitted). Plaintiffs also allege that Laucius "was involved in the drafting, producing, reviewing or supervising" the issuance of false account statements, and that Kogan sent these statements "through PFG and Defendant Eric Laucius" on a monthly basis. *Fox,* Third Am. Compl. at 5, 7, 17; *Sterin,* Second Am. Compl. ¶¶ 13, 14, 26, 80.

**15.** In *Fox International Relations,* but not *Sterin,* plaintiffs also allege that Laucius assisted Kogan in creating a false internet site for plaintiffs to check the status of their accounts with PFG. "This internet site never reflected the correct values of any of the investments in Plaintiffs [sic] accounts." *Fox,* Third Am. Compl. at 7.

Thus, defendant Laucius' motions to dismiss are denied as to plaintiffs' claims under Section 10(b) and Rule 10b–5.

## B. Laucius' Motions to Dismiss Are Denied as to Plaintiffs' Claims Under Section 20(a)

In Claims 9 and 19 of the Third Amended Complaint in *Fox International Relations* and Claims 8 and 18 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Section 20(a) of the Exchange Act. For the reasons set forth below, defendant Laucius' motions to dismiss are denied as to these claims.

### 1. Legal Standard: Section 20(a) of the Exchange Act

"Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b)." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 284. Section 20(a) provides, as follows:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

■ To state a claim of secondary liability under Section 20(a), a "plaintiff must prove that one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities laws." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 284. In addition, a plaintiff must prove "that the defendant was a culpable participant in the fraud." *Id.* at 284 n. 16 (cita-

tion omitted); *see also In re Goodyear Tire & Rubber Co.*, 1993 WL 130381 at *21–22.

### 2. Laucius' Motions to Dismiss: Section 20(a) Claims

In his motions to dismiss, defendant Laucius argues that plaintiffs' claims under Section 20(a) of the Exchange Act should be dismissed on the sole ground that plaintiffs do not allege an underlying securities law violation. The Court disagrees.

In their complaints, plaintiffs allege that defendant Kogan violated Section 10(b) of the Exchange Act and Rule 10b–5. *Fox*, Third Am. Compl. Claim 18; *Sterin*, Second Am. Compl. Claim 17. Defendant Kogan has not moved to dismiss these claims. Moreover, the Court concludes that plaintiffs have alleged each of the elements of a claim under Section 10(b) and Rule 1 0b–5 as to defendant Kogan. *See Fox*, Third Am. Compl. at 6–8, 17; *Sterin*, Second Am. Compl. ¶¶ 23, 26, 29 32, 38, 39, 80. On the basis of plaintiffs' allegations regarding defendant Kogan, the Court concludes that plaintiffs allege a "primary violation" of the securities laws. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 284. Thus, the Court denies defendant Laucius' motions to dismiss plaintiffs' claims under Section 20(a).

## C. Laucius' Motions to Dismiss Are Denied as to Plaintiffs' Claims Under Sections 1–301, 1–306, 1–401 and 1–403 of the Pennsylvania Securities Act

In Claims 12, 13, 14, and 15 of the Third Amended Complaint in *Fox International Relations* and Claims 11, 12, 13, and 14 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Sections 1–301, 1–306, 1–401, and 1–403 of the PSA. For the reasons set forth below, defendant

Laucius' motions to dismiss are denied as to these claims.

### 1. Legal Standard: Pennsylvania Securities Act

At issue are four sections of the PSA. The Court describes each section in turn.

Section 1–301(b) makes it "unlawful for any broker-dealer or issuer to employ an agent to represent him in this State unless the agent is registered under this act." 70 P.S. § 1–301.

Section 1–306 makes it unlawful for a broker-dealer to employ a person whose registration has been suspended or revoked "without the consent of the commission if such broker-dealer, investment adviser or issuer knew, or in the exercise of reasonable care should have known, of such [suspension or revocation] order." 70 P.S. § 1–306(a).

Section 1–401 "is modeled after Rule 10b–5 of the federal securities laws, and requires virtually the same elements of proof." *Rosen v. Communication Serv. Group, Inc.*, 155 F.Supp.2d 310, 321 n. 14 (E.D.Pa.2001).[16]

Section 1–403 makes it unlawful for a "broker-dealer or agent . . . [to] effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this State by means of any manipu-lative, deceptive or other fraudulent scheme." [17]

### 2. Laucius' Motions to Dismiss: Availability of a Private Right of Action

In his motions to dismiss, defendant Laucius argues that plaintiffs lack a private right of action to enforce their claims under sections 1–301, 1–306, 1–401, and 1–403 of the PSA. The Court disagrees.[18]

Defendant Laucius' argument is premised upon Section 1–506 of the PSA, which "puts clear limitations on a party's ability to assert a right of action under" the PSA. *Algrant v. Evergreen Valley Nurseries Ltd. Partnership*, 126 F.3d 178, 185 (3d Cir.1997). Section 1–506 requires an express cause of action for violations of the PSA, as follows:

> Except as explicitly provided in this act, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this act or any rule or order hereunder. Nothing in this act shall limit any liability which might exist by virtue of any other statute or under common law if this act were not in effect.

70 P.S. § 1–506.

Sections 1–301, 1–306, 1–401 and 1–403 do not contain an explicit cause of action as

---

**16.** 70 P.S. § 1–401 provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly: (a) To employ any device, scheme or artifice to defraud; (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

**17.** 70 P.S. § 1–403 provides:

No broker-dealer or agent shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this State by means of any manipulative, deceptive or other fraudulent scheme, device, or contrivance, fictitious quotation, or in violation of this act or any regulation or order hereunder.

**18.** In addition, defendant Laucius argues that plaintiffs do not plead fraud with particularity. The Court rejects this argument for the reasons set forth as to plaintiffs' claims under Section 10(b) of the Exchange Act and Rule 10b–5. *See supra* § IV(A)(2).

required by Section 1–506. However, courts in this circuit have identified two sections of the PSA—Sections 1–501 and 1–503—that provide a private right of action to enforce Sections 1–301, 1–306, 1–401 and 1–403. *See infra* §§ IV(C)(2) (a) and (b). The question before this Court is whether either statute provides a cause of action available to plaintiffs.

### a. Section 1–501

The Court concludes that Section 1–501 creates a limited cause of action for claims under Sections 1–301, 1–306, 1–401 and 1–403. However, this cause of action is unavailable to plaintiffs.

Section 1–501 provides, in relevant part: **Any person who (I) offers or sells a security** in violation of section 407(c) or at any time when such person has committed a material violation of section 301, or any regulation relating to either section 301 or 407(c), or any order under this act of which he has notice; or (ii) offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission ... **shall be liable to the person purchasing the security from him, who may sue either at law or in equity ... Any person who purchases a security** in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact ... **shall be liable to the person selling the security to him, who may sue either at law or in equity ...**

70 P.S. §§ 1–501(a),(b) (emphasis added).

The Court of Appeals for the Third Circuit (the "Third Circuit") has recognized that Section 1–501 creates a cause of action for violations of Sections 1–401 and 1–403 under certain circumstances. *See Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 609–10 (3d Cir.1980), *overruled in part on other grounds* by *In re Data Access Sys. Sec. Litig.*, 843 F.2d 1537 (3d Cir.1988). By its plain text, Section 1–501 also creates a cause of action for violations of Section 1–301. *See* 70 P.S. § 1–501(a) (providing a cause of action for a purchaser of securities against any person who offers or sells a security "at any time when such person has committed a material violation of section 301"); *see also* 70 P.S. § 1–501(f) ("Any investment adviser who violates section 301 shall be liable to the client for all fees paid, directly or indirectly, to the investment adviser for investment advisory services during the period of such violation."). Section 1–501 also creates a cause of action for violations of Section 1–306, which is not explicitly mentioned in Section 1–501. *See* 70 P.S. § 1–501 (providing a cause of action for purchasers of securities against any person who "has committed a material violation of section 301, or any regulation relating to ... section 301"); *see also Algrant*, 126 F.3d at 185 (holding that Section 1–501 creates a cause of action for violations of Section 1–508 under certain circumstances).

*Biggans* sets forth the limited circumstances in which Section 1–501 provides a cause of action. Specifically, Section 1–501 does not provide a cause of action against a defendant who did not "sell" or "purchase" securities under Sections 1–501(a) or (b). *Biggans*, 638 F.2d at 610. The Third Circuit applied this ruling in *Biggans*, as follows:

Although ... the section gives a cause of action to defrauded sellers and buyers, it only gives the seller or buyer the right to sue the person purchasing or selling the security. [Plaintiffs are] suing [their] broker, not the individuals who purchased the securities that [their] broker sold for [them] or those who sold the securities that [their] broker bought for [them] ... Hence ... the state secu-

rities act is wholly inapplicable to [plaintiffs]' claim for damages.

*Id.* (emphasis added); *see also Jairett v. First Montauk Securities Corp.*, 153 F.Supp.2d 562, 577 (E.D.Pa.2001) (holding that plaintiffs may not bring a claim under Section 1–501 against broker-dealer who was not a seller of securities); *McCarter v. Mitcham*, 883 F.2d 196, 204 (3d Cir.1989) (holding that Section 1–501 only provides a cause of action against a buyers or seller of securities, but suggesting that another cause of action arises under Section 1–503).

■ Plaintiffs do not allege in their complaints that Laucius (or Kogan) sold securities to plaintiffs, or purchased securities from plaintiffs. The complaints simply aver that "Laucius was the majority shareholder and the President of PFG, the brokerage firm where plaintiffs' money was invested." *Fox*, Third Am. Compl. at 3; *Sterin*, Second Am. Compl. ¶ 9. Thus, under *Biggans*, the Court concludes that plaintiffs do not have a cause of action under Section 1–501 against defendant Laucius.

**b. Section 1–503**

Because Section 1–501 does not provide a cause of action against defendant Laucius, the Court must determine whether plaintiffs have a cause of action against him under Section 1–503 of the PSA. The Court concludes that Section 1–503 does provide such a cause of action.

Section 1–503 states, in relevant part:

Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions ... and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless

the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

70 P.S. § 1–503(a).

The question before this Court is whether Section 1–503 provides a cause of action against a defendant who did not purchase or sell securities, and who is therefore not liable under Section 1–501. Because this question has not been addressed by the Third Circuit, this Court will analyze the issue in some detail.

In *Biggans*, the Third Circuit held that Section 1–501 is "[t]he sole source of civil liability for any acts in violation of sections 401, 403 and 404" of the PSA. *Biggans*, 638 F.2d at 609; *see also Sharp v. Coopers & Lybrand*, 649 F.2d 175, 191–92 (3d Cir. 1981) (following *Biggans*). Thereafter, in *Brennan v. Reed, Smith, Shaw & McClay*, 304 Pa.Super. 399, 450 A.2d 740 (Pa.Super.1982), the Pennsylvania Superior Court concluded that a law firm that did not sell or purchase securities could be held liable to an investor under Section 1–503 of the PSA.

On the basis of *Brennan*, the Third Circuit revisited the question whether Section 1–503 creates a cause of action against a defendant who did not sell or purchase securities in *McCarter*. The *McCarter* court held that the decision of the Pennsylvania Superior Court in *Brennan* "can be squared with the prior cases, because those cases suggested that section 501 ... only provides a cause of action to buyers and sellers, but they did not consider whether a cause of action under the Act could be obtained under section 503." *McCarter*, 883 F.2d at 204. Thus, under *McCarter*, the decisions of the Third Circuit in *Biggans* and *Sharp* do not preclude this Court from holding that Section 1–503 creates a cause of action against a defen-

dant who did not sell or purchase securities.

A number of courts in this circuit have held that Section 1–503 does provide such a cause of action in the context of lawsuits against broker-dealers, who are not liable under Section 1–501. *See Jairett,* 153 F.Supp.2d at 578 (disagreeing "with the determination that section 503 disallows a private suit by an investor against a broker"); *Carroll v. John Hancock Distributors, Inc.,* 1994 WL 87160, *5 (E.D.Pa. Mar.14, 1994) (denying motion for summary judgment by defendant broker-dealer as to claims under Section 1–503); *Northrop v. Lease Financing Corp.,* 1989 WL 104805, *3 (E.D.Pa. Sept.8, 1989) (holding that the PSA "apparently provides for an action by an investor against a broker in section 503"); *Bull v. American Bank and Trust Co. of Pa.,* 641 F.Supp. 62, 66 n. 5 (E.D.Pa.1986) (holding that broker-dealers are "potentially liable" under Section 1–503).

Moreover, the plain text of Section 1–503 supports the determination that Section 1–503 provides a cause of action against a defendant who did not sell or purchase securities. Section 1–501 provides liability only against "[a]ny person who ... offers or sells a security" or who "purchases a security" in violation of the PSA. Section 1–503, in contrast, contains no such language. To the contrary, Section 1–503 states: "Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions ... who materially aids in the act or transaction constituting the [securities law] violation" is jointly and severally liable along with the primary violator. 70 P.S. § 1–503(a).

■ Despite the plain text of Section 1–503, some debate remains over the question whether Section 1–503 creates a cause

of action against a defendant who did not sell or purchase securities. On the basis of *Biggans,* some courts in this circuit have held that "the section only establishes a cause of action in favor of a party who has been held liable to a private party under section 501." *In re Phar–Mor, Inc. Sec. Litig.,* 892 F.Supp. 676, 688 (W.D.Pa.1995); *see also Schor v. Hope,* 1992 WL 22189, *4 (E.D.Pa. Feb.4, 1992); *Penturelli v. Spector, Cohen, Gadon & Rosen,* 640 F.Supp. 868, 872 (E.D.Pa.1986). The Court rejects this authority. Under *McCarter* and the plain text of Section 1–503, the Court concludes that the better interpretation of Section 1–503 is that the statute creates a cause of action against a defendant who "materially aids" in a securities law violation, with or without a prior showing of liability by the plaintiff. 70 P.S. § 1–503(a).

The Court further concludes that Section 1–503 provides a cause of action against defendant Laucius. In their complaints, plaintiffs allege that defendant Laucius was an "affiliate ... principal executive officer or director ... [or] person occupying a similar status or performing similar functions" with regard to defendant Kogan, and that defendant Laucius "materially aid[ed]" Kogan in transactions in violation of the PSA. *Id.* Among plaintiffs' allegations are the following:

i. "Laucius was the majority shareholder and the President of PFG." *Fox,* Third Am. Compl. at 3; *Sterin,* Second Am. Compl. ¶ 9.

ii. Laucius "employed Michael Kogan to work for PFG." *Fox,* Third Am. Compl. at 6; *Sterin,* Second Am. Compl. ¶ 19.

iii. Kogan "through PFG and Defendant Eric Laucius sent statements generated from PFG to [plaintiffs], which were not reflective of the true status of their investment portfolio." *Fox,*

Third Am. Compl. at 17; *Sterin,* Second Am. Compl. ¶ 80.

iv. Laucius "was involved in the drafting, producing, reviewing or supervising the false and misleading statements." *Fox,* Third Am. Compl. at 5; *Sterin,* Second Am. Compl. ¶¶ 13, 14.

On the basis of these allegations, the Court concludes that plaintiffs have a cause of action against defendant Laucius under Section 1–503. Thus, the Court denies defendant Laucius' motions to dismiss plaintiffs' claims under Sections 1–301, 1–306, 1–401, and 1–403.

### D. Laucius' Motions to Dismiss Are Granted as to Plaintiffs' Claims Under Section 1–501 of the Pennsylvania Securities Act

In Claim 16 of the Third Amended Complaint in *Fox International Relations* and Claim 15 of the Second Amended Complaint in *Sterin,* plaintiffs assert violations of Section 1–501 of the PSA. For the reasons set forth below, defendant Laucius' motions to dismiss are granted as to these claims.

#### 1. Legal Standard: Section 1–501 of the Pennsylvania Securities Act

As stated in Section IV(C)(2)(a) above, Section 1–501 contains a limited cause of action for purchasers or sellers of securities against "[a]ny person who ... offers or sells a security" or "purchases a security" in violation of the PSA. 70 P.S. § 1–501.

#### 2. Laucius' Motions to Dismiss: Availability of a Private Right of Action

In his motions to dismiss, defendant Laucius argues that plaintiffs lack a private right of action to enforce their claims under Section 1–501 of the PSA. The Court agrees.

As previously explained, Section 1–501 does not provide a cause of action against a defendant, such as Laucius, who did not sell or purchase securities. *See Biggans,* 638 F.2d at 609. It follows that plaintiffs cannot assert a Section 1–501 claim against defendant Laucius, absent another cause of action.

The Court further concludes that plaintiffs' claims under Section 1–501 cannot be construed as claims under Section 1–503. Sections 1–501 and 1–503 provide two distinct causes of action. Specifically, Section 1–501 provides a cause of action against a person who "sells" or "purchases" securities in violation of the PSA, while Section 1–503 imposes secondary liability against a defendant "who materially aids in the act or transaction constituting" a violation of Section 1–501. *See* 70 P.S. §§ 1–501, 1–503; *see also McCarter,* 883 F.2d at 204 (distinguishing Sections 1–501 and 1–503). Because Sections 1–501 and 1–503 are distinct causes of action, Section 1–503 is unavailable as to plaintiffs' Section 1–501 claims.

Thus, defendant Laucius' motions to dismiss are granted as to plaintiffs' claims under Section 1–501 of the PSA.

### E. Laucius' Motions to Dismiss Are Denied as to Plaintiffs' Common Law Claims

In Claims 6 and 7 of the Third Amended Complaint in *Fox International Relations* and Claims 5 and 6 of the Second Amended Complaint in *Sterin,* plaintiffs assert common law "fraud and misrepresentation," and breach of fiduciary duty. For the reasons set forth below, defendant Laucius' motions to dismiss are denied as to these claims.

#### 1. Legal Standard: Common Law Claims

■ Under Pennsylvania law, the elements of common law fraud are: (1) a

misrepresentation, (2) material to the transaction, (3) made falsely, (4) with the intent of misleading another to rely on it, (5) justifiable reliance resulted, and (6) an injury proximately caused by the reliance. *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 136 (3d Cir.2005).

■ Under Pennsylvania law, the elements of fraudulent misrepresentation are: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Petruska v. Gannon University*, 462 F.3d 294, 310 (3d Cir.2006) (quoting *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 19, 606 A.2d 444 (Pa.1992)); *see also Floyd v. Brown & Williamson Tobacco Corp.*, 159 F.Supp.2d 823, 832 n. 6 (E.D.Pa.2001).[19]

■ To state a breach of fiduciary duty claim under Pennsylvania law, plaintiffs must plead a confidential relationship and "(1) [t]hat the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2)[t]hat the plaintiff suffered injury; and (3)[t]he defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *Baker v. Family Credit Counseling Corp.*, 440 F.Supp.2d 392, 414–15 (E.D.Pa.2006).

**2. Laucius' Motions to Dismiss: Common Law Claims**

In his motions to dismiss, defendant Laucius argues that plaintiffs' common law claims should be dismissed on two grounds. First, Laucius asserts that plaintiffs do not plead fraud with particularity under the Reform Act and Rule 9(b). Second, Laucius asserts that this Court should decline to exercise its supplemental jurisdiction over plaintiffs' common law claims.

For the reasons stated in Section IV(A)(2), as to plaintiff's claims under Section 10(b) of the Exchange Act and Rule 10b–5, the Court concludes that plaintiffs have stated fraud with particularity. Because of the relationship between Laucius' federal and state claims, the Court exercises its supplemental jurisdiction over plaintiffs common law claims. *See* 28 U.S.C. § 1367. Thus, defendant Laucius' motions to dismiss are denied as to these common law claims.

**V. DISCUSSION: FISERV'S MOTIONS TO DISMISS**

Currently before the Court are two motions to dismiss filed by defendant Fiserv in *Fox International Relations* and *Sterin*. Because the motions to dismiss are substantively identical, the Court addresses them as one in this memorandum.

In its motions to dismiss, defendant Fiserv seeks to dismiss the following claims: (1) violations of Section 10(b) of the Exchange Act and Rule 10b–5; (2) violations

19. Plaintiffs' complaints do not specify whether their claim is for fraudulent misrepresentation or negligent misrepresentation. Under Pennsylvania law,

> [n]egligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known of the falsity; (3) with an intent to

> induce another to act on it; and [ ](4) which results in injury to a party acting in justifiable reliance on the misrepresentation.

*Tran v. Metropolitan Life Ins. Co.*, 408 F.3d 130, 135 n. 8 (3d Cir.2005) (quoting *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555 (Pa.1999)). For the purposes of this memorandum, the analysis of the two torts is the same.

of Section 20(a) of the Exchange Act; (3) violations of Section 15(a)(1) of the Exchange Act; (4) violations of Section 1–306 of the PSA; (5) violations of Section 1–503 of the PSA; (6) common law negligent supervision; and (7) common law breach of fiduciary duty. The Court addresses each claim in turn.[20]

## A. Fiserv's Motions to Dismiss Are Denied as to Plaintiffs' Claims Under Section 10(b) of the Exchange Act and Rule 10b–5

In Claim 18 of the Third Amended Complaint in *Fox International Relations* and Claim 17 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Section 10(b) of the Exchange Act and Rule 1 0b–5. For the reasons set forth below, defendant Fiserv's motions to dismiss are denied as to these claims.

### 1. Legal Standard: Section 10(b) of the Exchange Act and Rule 10b–5

Section 10(b) of the Exchange Act and Rule 10b–5 impose primary liability upon persons or entities who employ manipulative and deceptive practices while engaged in a scheme to defraud. As stated in Section IV(A)(1) above, to prevail on a claim under Section 10(b) and Rule 10b–5, a plaintiff must show: (1) a material misrepresentation or omission; (2) with scienter, i.e., a wrongful state of mind; (3) made in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc.*, 544 U.S. at 341–42, 125 S.Ct. 1627; *see also, In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at

275. In addition, a plaintiff alleging claims under Section 10(b) and Rule 10b–5 must comply with the heightened pleading requirements of the Reform Act, 15 U.S.C. § 78u–4(b)(1), and Federal Rule of Civil Procedure 9(b).

The scienter requirement is of particular importance with respect to defendant Fiserv's motions to dismiss. Under the Reform Act, plaintiffs in a securities fraud case must plead scienter by either (1) "alleging facts establishing a motive and opportunity to commit fraud, or [ (2) ] by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 534–35 (citations omitted). "A reckless statement is one 'involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.' " *Id.* at 535 (citations omitted).

### 2. Fiserv's Motions to Dismiss: Section 10(b) and Rule 10b–5 Claims

In its motions to dismiss, defendant Fiserv asserts that plaintiffs' claims under Section 10(b) and Rule 10b–5 should be dismissed on three grounds: (1) that plaintiffs do not plead the purchase or sale of securities; (2) that plaintiffs do not plead scienter; and (3) that plaintiffs do not plead fraud with particularity as required by the Reform Act and Rule 9(b). The Court addresses each argument in turn.

---

20. Defendant Fiserv also moves to dismiss plaintiff Natan Lisitsa from *Fox International Relations* for lack of standing. Specifically, defendant Fiserv argues that plaintiffs "do not allege that Natan Lisitsa was a purchaser or seller of securities." *Fox*, Mot. of Def. Fiserv to Dismiss Third Am. Compl. at 28. The Court disagrees. Plaintiffs allege that Natan

Lisitsa "began to make investments through PFG and Michael Kogan by writing checks directly to Fiserv for the purpose of buying and selling securities with the ultimate goal of maximizing investment profit." *Fox*, Third Am. Compl. at 6. Thus, the Court denies this part of defendant Fiserv's Motion to Dismiss in *Fox International Relations*.

■ First, the Court concludes that plaintiffs allege the purchase or sale of securities. Plaintiffs allege that they invested money through Kogan and PFG by writing checks directly to Fiserv, and that their purpose was to buy and sell securities "with the ultimate goal of maximizing investment profit." *Fox*, Third Am. Compl. at 6; *Sterin*, Second Am. Compl. ¶ 23.

■ Second, the Court concludes that plaintiffs satisfy the scienter requirement of Section 10(b) and Rule 10b–5 "by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 534–35. Plaintiffs provide detailed allegations of recklessness on the part of Fiserv, as follows:

i. Fiserv "was fully aware" that Kogan was an unlicensed broker. *Fox*, Third Am. Compl. at 9; *Sterin*, Second Am. Compl. ¶ 42.

ii. "On several occasions Fiserv shut down trading accounts that were operated by Kogan for various trading violations," but permitted Kogan to open other trading accounts shortly thereafter. *Fox*, Third Am. Compl. at 9; *Sterin*, Second Am. Compl. ¶ 43.

iii. Fiserv permitted Kogan to make trades and changes to plaintiffs' accounts without power of attorney or letter of authorization. *Fox*, Third Am. Compl. at 8; *Sterin*, Second Am. Compl. ¶ 33.

iv. Fiserv did not investigate "multiple change of customer address requests by Michael Kogan, multiple transfer [sic] of funds between separately owned accounts by Michael Kogan, multiple deposits of funds in accounts titled in names other than the check writers by Michael Kogan, various trading violations by Michael Kogan ... and the fact that all of these functions were being performed by

Michael Kogan when he did not have a brokers license." *Fox*, Third Am. Compl. at 9; *Sterin*, Second Am. Compl. ¶ 46.

Viewing these allegations in the light most favorable to plaintiffs, the Court concludes that plaintiffs allege behavior by Fiserv that goes "beyond merely performing bookkeeping functions." *Cf. Dillon*, 731 F.Supp. at 637. Indeed, plaintiffs allege that defendant Fiserv supervised trading accounts operated by Kogan, shut down accounts "[o]n several occasions ... for various trading violations," and permitted Kogan to open other trading accounts shortly thereafter. *Fox*, Third Am. Compl. at 9; *Sterin*, Second Am. Compl. ¶ 43. Combined with Fiserv's alleged knowledge that Kogan was not a licensed broker, these allegations do not "reflect ... the standard practice of a clearing broker." *In re Blech Sec. Litig.*, 961 F.Supp. 569, 582–83 (S.D.N.Y.1997) (citation omitted) (denying motion to dismiss Rule 10b–5 claim against defendant clearing broker which " 'directed' or 'contrived' certain allegedly fraudulent trades"); *see also Antinoph v. Laverell Reynolds Securities, Inc.*, 1989 WL 102585, *4 (E.D.Pa. Sept.5, 1989) (denying motion to dismiss Rule 10b–5 claim against defendant clearing broker on the basis of "misrepresentations and omissions of margin credit information").

■ Third, the Court concludes that plaintiffs plead fraud with particularity. Plaintiffs identify the alleged fraud in sufficient detail to place Fiserv "on notice of the precise misconduct with which [it][is] charged." *Lum*, 361 F.3d at 223–24. Specifically, plaintiffs allege that Fiserv "was fully aware" that Kogan was an unlicensed broker; that Fiserv shut down accounts operated by Kogan for trading violations, and permitted Kogan to open other accounts shortly thereafter; and that Fiserv

did not investigate unusual or improper trading behavior by defendant Kogan. *Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶¶ 42, 43, 46. "While plaintiffs have not articulated their argument in detail, [the Court] is not able to say at this time that they can prove no set of facts that would entitle them to relief." *Bull,* 641 F.Supp. at 69.

Thus, the Court denies defendant Fiserv's motions to dismiss as to plaintiffs' claims under Section 10(b) and Rule 10b–5.

### B. Fiserv's Motions to Dismiss Are Denied as to Plaintiffs' Claims Under Section 20(a)

In Claims 1 and 19 of the Third Amended Complaint in *Fox International Relations* and Claims 1 and 18 of the Second Amended Complaint in *Sterin,* plaintiffs assert violations of Section 20(a) of the Exchange Act. For the reasons set forth below, defendant Fiserv's motions to dismiss are denied as to these claims.

#### 1. Legal Standard: Section 20(a) of the Exchange Act

"Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b)." *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d at 284. To state a claim of secondary liability under Section 20(a), "the plaintiff must prove that one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities laws." *Id.* In addition, the plaintiff must prove "that the defendant was a culpable participant in the fraud." *Id.* at 284 n. 16 (citation omitted); *see also In re Goodyear Tire & Rubber Co.,* 1993 WL 130381 at *21–22. The term "control" is defined under the implementing regulations as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person." 17

C.F.R. § 230.405; *see also* 17 C.F.R. § 240.12b–2.

#### 2. Fiserv's Motions to Dismiss: Section 20(a) Claims

In its motions to dismiss, defendant Fiserv argues that plaintiffs have not alleged that Fiserv is a "controlling person" under Section 20(a). The Court disagrees.

In making this determination, the Court recognizes that clearing brokers are not ordinarily controlling persons of introducing brokers. *See, e.g., Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 1996 WL 164312, *2 (N.D.Ill.1996) ("Under federal securities law, clearing agents performing operational or ministerial duties have not been considered controlling persons nor subject to liability.") (citation omitted); *In re Blech Sec. Litig.,* 961 F.Supp. at 586 (granting motion to dismiss Section 20(a) claim against clearing broker where plaintiffs did not allege that clearing broker had "actual control" over introducing broker); *Dillon,* 731 F.Supp. at 638 (granting motion to dismiss Section 20(a) claim against clearing broker where plaintiffs did not allege that clearing broker "had the power to do more than prevent unlawful activity"); *Antinoph,* 1989 WL 102585 at *5 (granting motion to dismiss Section 20(a) claim against clearing broker where plaintiffs did not allege that clearing broker had "actual control" over primary violator).

 Nevertheless, the Court concludes that plaintiffs' allegations are sufficient to state a claim that Fiserv is a controlling person of Kogan and PFG. As to Kogan, plaintiffs allege that "Fiserv was fully aware that Defendant Michael Kogan was an unlicensed broker, but allowed him to operate trading accounts"; and that Fiserv "shut down trading accounts that were operated by Kogan for various trading violations," but permitted Kogan to open oth-

er trading accounts shortly thereafter. *Fox*, Third Am. Compl. at 9, 12; *Sterin*, Second Am. Compl. ¶¶ 42–43, 55. As to defendant PFG, plaintiffs allege that Fiserv, and all defendants, "had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company [PFG], including the content and dissemination or omission of statements which Plaintiffs content were false and misleading." *Fox*, Third Am. Compl. at 23; *Sterin*, Second Am. Compl. ¶ 131 (emphasis added).

On the basis of these allegations, the Court determines that plaintiffs have sufficiently alleged that Fiserv was a "controlling person" under Section 20(a). Thus, defendant Fiserv's motions to dismiss are denied as to plaintiffs' Section 20(a) claims. The Court will revisit this issue at the summary judgment stage.

### C. Fiserv's Motions to Dismiss Are Granted as to Plaintiffs' Claims Under Section 15(a)(1)

In Claim 1 of the Third Amended Complaint in *Fox International Relations* and Claim 1 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Section 15(a)(1) of the Exchange Act. For the reasons set forth below, defendant Fiserv's motions to dismiss are granted as to these claims.

#### 1. Legal Standard: Section 15(a)(1) of the Exchange Act

Section 15(a)(1) of the Exchange Act bars unlicensed brokers from making use of the mail or any instrumentality of interstate commerce to purchase or sell securities. Section 15(a)(1) provides:

> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a bro-

ker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

15 U.S.C. § 78*o*(a)(1).

#### 2. Fiserv's Motions to Dismiss: Availability of a Private Right of Action

In its motions to dismiss, Fiserv argues that Section 15(a)(1) does not give rise to an express or implied cause of action. This Court agrees.

In concluding that Section 15(a)(1) does not provide a private right of action, the Court joins the "overwhelming majority" of courts to decide this issue. *See Sheldon v. Vermonty*, 204 F.R.D. 679, 685 (D.Kan. 2001) (collecting cases); *see also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir.1990); *Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777 (2d Cir. 1989); *Brannan v. Eisenstein*, 804 F.2d 1041, 1043 n. 1 (8th Cir.1986); *Carapico v. Philadelphia Stock Exchange*, 1994 WL 50295, *2 (E.D.Pa. Feb.14, 1994); *Fulton Bank v. McKittrick & Briggs Securities, Inc.*, 1990 WL 126179, *10 (E.D.Pa. Aug.27, 1990); *Newfield v. Shearson Lehman Bros.*, 699 F.Supp. 1124, 1126 (E.D.Pa.1988); *Bull*, 641 F.Supp. at 65; *Walck v. American Stock Exchange, Inc.*, 565 F.Supp. 1051, 1059 (E.D.Pa.1981), *aff'd on other grounds*, 687 F.2d 778 (3d Cir. 1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983).

Under *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), "[t]he first step in a [federal] private right of action inquiry is to look at the text of the statute itself to determine whether Congress has explicitly provided a right to file suit." *American Trucking Ass'n, Inc. v. Delaware River Joint Toll Bridge Com'n*, 458 F.3d 291, 296 (3d Cir.2006). In this case, Section 15(a)(1) of the Exchange Act does not provide an explicit cause of action.

Accordingly, the Court must next look to Congress' intent in enacting Section 15(a) to determine whether it would be appropriate to imply a private right of action. Specifically, the Court must consider four questions:

First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' . . . Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Fourth,] is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 296–97 (quoting *Cort*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26). In this analysis, "[t]he first two criteria are critical. If they do not point toward a private right, the remaining two 'cannot by themselves be a basis for implying a right of action.'" *American Tel. & Tel. Co. v. M/V Cape Fear*, 967 F.2d 864, 866 (3d Cir.1992) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 580, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

Applying the four *Cort* factors in this case, the Court finds persuasive the analysis of the *Sheldon* court, and "finds no Congressional intent to create a private remedy under section 15(a)(1)." *Sheldon*, 204 F.R.D. at 685.

Again, the legislate history is silent. Also, the Court finds it significant that various subsections of section 15 provide for action by the Securities Exchange Commission relating to the registration of brokers and dealers. The fact that Congress provided for means by which violations of various provisions of section 15 are to be enforced weighs heavily against any suggestion that Congress might have intended to create a private right of action against a broker or dealer who failed to properly register in violation of the statute.

*Id.* Accordingly, the Court concludes that it would be inappropriate to imply a private right of action in Section 15(a) (1) of the Exchange Act.

Thus, defendant Fiserv's motions to dismiss are granted as to plaintiffs' claims under Section 15(a)(1).

### D. Fiserv's Motions to Dismiss Are Granted as to Plaintiffs' Claims Under Section 1–306 of the Pennsylvania Securities Act

In Claim 2 of the Third Amended Complaint in *Fox International Relations* and Claim 2 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Section 1–306 of the PSA. For the reasons set forth below, defendant Fiserv's motions to dismiss are granted without prejudice to plaintiffs' right to file an amended complaint as to these claims if warranted by the facts.

#### 1. Legal Standard: Section 1–306 of the Pennsylvania Securities Act

Section 1–306 makes it unlawful for a broker-dealer to employ a person whose registration has been suspended or revoked "without the consent of the commission if such broker-dealer, investment ad-

viser or issuer knew, or in the exercise of reasonable care should have known, of such [suspension or revocation] order." 70 P.S. § 1–306(a).

### 2. Fiserv's Motions to Dismiss: Section 1–306 Claims

Defendant Fiserv moves to dismiss plaintiffs' claims under Section 1–306 of the PSA on two grounds. First, defendant Fiserv argues that plaintiffs lack a private right of action to allege Section 1–306 claims. Second, defendant Fiserv argues that plaintiffs do not allege that Kogan was "employed by" Fiserv under the statute.

As to the first argument, for the reasons stated in Section IV(C) (2)(b) above, the Court concludes that Section 1–503 creates a private right of action for a purchaser of securities against a broker-dealer. *See, e.g., Jairett*, 153 F.Supp.2d at 578. Plaintiffs allege that defendant Fiserv is a "registered broker/dealer." *Fox*, Third Am. Compl. at 4; *Sterin*, Second Am. Compl. ¶ 11. Accordingly, plaintiffs may allege a violation of Section 1–306 under Section 1–503.

■■■ As to the second argument, however, the Court concludes that plaintiffs do not allege in their complaints that defendant Fiserv "employed" Kogan under Section 1–306. On this issue, plaintiffs allege the following:

> Defendant Fiserv was a broker-dealer, investment adviser or issuer who knowingly, or through the exercise of reasonable care should have known that Michael Kogan was an unlicensed broker-dealer unfit for the position entrusted to him. Nonetheless, **Defendant Fiserv permitted Defendant Michael Kogan to trade securities through Fiserv as an unregistered broker-dealer.**

*Fox*, Third Am. Compl. at 13; *Sterin*, Second Am. Compl. ¶ 60 (emphasis added). Significantly, plaintiffs allege that "Fiserv

permitted [Kogan] to trade securities" through Fiserv, but do not allege that Fiserv employed Kogan. *Fox*, Third Am. Compl. at 13; *Sterin*, Second Am. Compl. ¶ 60.

Thus, defendant Fiserv's motions to dismiss are granted as to plaintiffs' claims under Section 1–306. This ruling is without prejudice to plaintiffs' right to file an amended complaint as to these claims if warranted by the facts.

### E. Fiserv's Motions to Dismiss Are Denied as to Plaintiffs' Claims Under Section 1–503 of the Pennsylvania Securities Act

In Claim 3 of the Third Amended Complaint in *Fox International Relations* and Claim 3 of the Second Amended Complaint in *Sterin*, plaintiffs assert violations of Section 1–503 of the PSA. For the reasons set forth below, defendant Fiserv's motions to dismiss are denied as to these claims.

### 1. Legal Standard: Section 1–503 of the Pennsylvania Securities Act

As stated in Section IV(C)(2)(b) above, Section 1–503 imposes secondary liability for violations of the PSA, as follows:

> Every affiliate of a person liable under section 501 or 502 … and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

70 P.S. § 1–503(a).

### 2. Fiserv's Motions to Dismiss: Section 1–503 Claims

Defendant Fiserv asserts that plaintiffs' claims under Section 1–503 of the PSA

should be dismissed on two grounds: (1) that plaintiffs do not allege an underlying violation of Section 1–501; and (2) that plaintiffs do not plead fraud with particularity as required by the Reform Act and Rule 9(b). The Court disagrees.

First, the Court concludes that plaintiffs allege an underlying violation of the PSA. Specifically, plaintiffs allege that Kogan violated Section 1–501. *Fox*, Third Am. Compl. Claim 16; *Sterin*, Second Am. Compl. Claim 15. Second, as stated in Section V(A)(2) above as to plaintiffs' claims under Section 10(b) and Rule 10b–5, the Court concludes that plaintiffs plead fraud with particularity. Thus, defendant Fiserv's motions to dismiss are denied as to plaintiffs' claims under Section 1–503 of the PSA.

### F. Fiserv's Motions to Dismiss Are Granted as to Plaintiffs' Negligent Supervision Claims

In Claim 4 of the Third Amended Complaint in *Fox International Relations* and Claim 4 of the Second Amended Complaint in *Sterin*, plaintiffs assert common law negligent supervision against defendant Fiserv. For the reasons set forth below, defendant Fiserv's motions to dismiss are granted as to these claims. This ruling is without prejudice to plaintiffs' right to file an amended complaint with respect to these claims if warranted by the facts.

#### 1. Legal Standard: Negligent Supervision

■ Under Pennsylvania law, "the tort of negligent supervision appears as a particular kind of negligence, that is, negligence predicated upon a breach of a duty to supervise." *Giannone v. Ayne Institute*, 290 F.Supp.2d 553, 566 (E.D.Pa.2003). "[A]n employer may be liable for negligent supervision 'where the employer fails to exercise ordinary care to prevent an intentional harm to a third party which (1) is committed on the employer's premises by an employee acting outside the scope of his employment and (2) is reasonably foreseeable.'" *Petruska*, 462 F.3d at 309 n. 14.

#### 2. Fiserv's Motions to Dismiss: Negligent Supervision Claims

■ In its motions to dismiss, defendant Fiserv asserts that plaintiffs' negligent supervision claims must be dismissed because plaintiffs do not allege that Fiserv had a duty to supervise Kogan or PFG. The Court agrees.

In their complaints, plaintiffs allege that Fiserv had duties towards investors of PFG. Specifically, plaintiffs allege that "Fiserv had a duty to the investors of PFG and customers of Fiserv to ensure that their investment accounts were being treated and recorded accurately according to the rules and regulations promulgated by the federal government and those rules established and [sic] necessary to ensure proper supervision of the activities of its broker/dealers." *Fox*, Third Am. Compl. at 15; *Sterin*, Second Am. Compl. ¶ 67. That allegation is far from clear.

What is clear from the two complaints is that plaintiffs do not allege that Fiserv had a duty to supervise Kogan or PFG. Plaintiffs do not allege that Fiserv employed Kogan. Nor do plaintiffs identify any "rules and regulations" under which a duty to supervise arose.

On the basis of plaintiffs' allegations, the Court concludes that plaintiffs do not "place the defendants on notice of the precise misconduct with which they are charged." *Lum*, 361 F.3d at 223–24. Thus, defendant Fiserv's motions to dismiss are granted as to plaintiffs' negligent supervision claims. This holding is without prejudice to plaintiffs' right to file an amended complaint as to these claims if warranted by the facts.

### G. Fiserv's Motions to Dismiss Are Denied as to Plaintiffs' Breach of Fiduciary Duty Claims

In Claim 7 of the Third Amended Complaint in *Fox International Relations* and Claim 6 of the Second Amended Complaint in *Sterin,* plaintiffs assert common law breach of fiduciary duty against defendant Fiserv. For the reasons set forth below, defendant Fiserv's motions to dismiss are denied as to these claims.

#### 1. Legal Standard: Breach of Fiduciary Duty

■■■ To state a claim of breach of fiduciary duty under Pennsylvania law, a plaintiff must first "establish that a fiduciary or confidential relationship existed between [plaintiff] and the defendants." *Baker,* 440 F.Supp.2d at 414. A confidential relationship "exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Id.* (quoting *Silver v. Silver,* 421 Pa. 533, 219 A.2d. 659 (1966)). In other words, "[a] fiduciary is a special kind of agent who, as a result of a relationship of trust between the parties, has a duty to act primarily for the benefit of the principal and all of their undertakings." *Continental Life Ins. Co. v. Shearson Lehman Hutton, Inc.,* 1992 WL 6750, *3 (E.D.Pa. Jan.14, 1992).

■■■ Under Pennsylvania law, "[a] broker has a duty to act in good faith and with reasonable care, skill and diligence, and to advise his principal of relevant facts and circumstances known to the broker." *DiPalma v. LaLiberte,* 1996 WL 480729, *2 (E.D.Pa. Aug.16, 1996); *see also Alfaro v. E.F. Hutton & Co., Inc.,* 606 F.Supp. 1100, 1120 (E.D.Pa.1985); *Merrill Lynch, Pierce, Fenner & Smith v. Perelle,* 356 Pa.Super. 165, 514 A.2d 552, 560–61 (1984). However, a clearing broker, "in performing its ordinary clearing broker function"

has no fiduciary duties to customers of an introducing broker. *Rozsa v. SG Cowen Securities Corp.,* 165 Fed. Appx. 892, 894 (2d Cir.2006); *see also Riggs v. Schappell,* 939 F.Supp. 321, 329–30 (D.N.J.1996) (gathering cases).

In addition to a confidential relationship, a plaintiff alleging breach of fiduciary duty must allege: "(1) [t]hat the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) [t]hat the plaintiff suffered injury; and (3) [t]he defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." *Baker,* 440 F.Supp.2d at 414–15.

#### 2. Fiserv's Motions to Dismiss: Breach of Fiduciary Duty Claims

■■■ In its motions to dismiss, defendant Fiserv asserts that plaintiffs' breach of fiduciary duty claims must be dismissed because plaintiffs do not allege that Fiserv owed fiduciary duties to plaintiffs. The Court disagrees.

In their complaints, plaintiffs allege facts that do not "reflect . . . the standard practice of a clearing broker." *In re Blech Sec. Litig.,* 961 F.Supp. at 582–83. Specifically, plaintiffs allege that "Defendants Fiserv, Eric Laucius, and Michael Kogan were entrusted with the control of plaintiffs [sic] investment portfolios in accounts directly controlled by each of these parties, thus owing a fiduciary duty to Plaintiffs." *Fox,* Third Am. Compl. at 16; *Sterin,* Second Am. Compl. ¶ 76. In addition, plaintiffs allege that defendant Fiserv shut down accounts operated by Kogan "[o]n several occasions . . . for various trading violations," and permitted Kogan to open other trading accounts shortly thereafter; and that Fiserv knew that Kogan was not a licensed broker. *Fox,* Third Am. Compl. at 9; *Sterin,* Second Am. Compl. ¶¶ 42–43.

Viewing these allegations in the light most favorable to plaintiffs, the Court concludes that plaintiffs have alleged that defendant Fiserv owed a fiduciary duty to plaintiffs. Thus, the Court denies defendant Fiserv's motions to dismiss as to plaintiffs' breach of fiduciary duties claims. The Court will revisit this issue at the summary judgment stage.

## VI. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motions to dismiss filed by defendant Laucius, and grants in part and denies in part the motions to dismiss filed by defendant Fiserv.

An appropriate order follows.

### ORDER

**AND NOW,** this 20th day of March, 2007, upon consideration of:

1. Motion of Defendant Eric Laucius to Dismiss Plaintiffs' Third Amended Complaint (Document No. 68, filed May 23, 2006 in C.A. No. 04–5877) and Plaintiffs [sic] Memorandum of Law in Opposition to Defendant Eric Laucius' Motion to Dismiss Plaintiffs [sic] Third Amended Complaint (Document No. 73, filed June 12, 2006 in C.A. No. 04–5877);

2. Motion of Defendant Eric Laucius to Dismiss Plaintiffs' First [sic] Amended Complaint (Document No. 37, filed May 23, 2006 in C.A. No. 05–1559) and Plaintiffs [sic] Memorandum of Law in Opposition to Defendant Fiserv Securities, Inc.'s [sic] Motion to Dismiss Plaintiffs [sic] Amended Complaint (Document No. 41, filed June 12, 2006 in C.A. No. 05–1559);

3. Motion of Defendant Fiserv Securities, Inc. to Dismiss Plaintiffs' Third Amended Complaint (Document No. 71, filed May 26, 2006 in C.A. No. 04–5877), Plaintiffs [sic] Memorandum of Law in Opposition to Defendant Fiserv Securities, Inc.'s Motion to Dismiss Plaintiffs [sic]

Third Amended Complaint (Document No. 75, filed June 15, 2006 in C.A. No. 04–5877), and Reply Memorandum of Law in Support of the Motion of Defendant Fiserv Securities, Inc. to Dismiss Plaintiffs' Third Amended Complaint (Document No. 78, filed July 12, 2006 in C.A. No. 04–5877); and

4. Motion of Defendant Fiserv Securities, Inc. to Dismiss Plaintiffs' Second Amended Complaint (Document No. 40, filed May 26, 2006 in C.A. No. 05–1559), Plaintiffs [sic] Memorandum of Law in Opposition to Defendant Fiserv Securities, Inc.'s Motion to Dismiss Plaintiffs [sic] Amended Complaint (Document No. 43, filed June 15, 2006 in C.A. No. 05–1559), and Reply Memorandum of Law in Support of the Motion of Defendant Fiserv Securities, Inc. to Dismiss Plaintiffs' Second Amended Complaint (Document No. 46, filed July 12, 2006 in C.A. No. 05–1559), **IT IS ORDERED,** as follows:

### A. Motions to Dismiss Filed by Defendant Eric Laucius

The Motion of Defendant Eric Laucius to Dismiss Plaintiffs' Third Amended Complaint (Document No. 68 in C.A. No. 04–5877) and the Motion of Defendant Eric Laucius to Dismiss Plaintiffs' First [sic] Amended Complaint (Document No. 37 in C.A. No. 05–1559) are **GRANTED IN PART AND DENIED IN PART,** as follows:

1. Defendant Laucius' Motions to Dismiss are **GRANTED** as to plaintiffs' claims under 70 P.S. § 1–501. Plaintiffs' claims against defendant Laucius included in Claim 16 in C.A. No. 04–5877 and Claim 15 in C.A. No. 05–1559 are **DISMISSED WITH PREJUDICE;**

2. Defendant Laucius' Motions to Dismiss are **DENIED** in all other respects.

## B. Motions to Dismiss Filed by Defendant Fiserv Securities, Inc.

The Motion of Defendant Fiserv Securities, Inc. to Dismiss Plaintiffs' Third Amended Complaint (Document No. 71 in C.A. No. 04–5877) and the Motion of Defendant Fiserv Securities, Inc. to Dismiss Plaintiffs' Second Amended Complaint (Document No. 40 in C.A. No. 05–1559) are **GRANTED IN PART AND DENIED IN PART,** as follows:

1. Defendant Fiserv's Motions to Dismiss are **GRANTED** with respect to plaintiffs' claims under Section 15(a)(1) of the Exchange Act. Plaintiffs' claims under Section 15(a)(1) of the Exchange Act included in Claim 1 in C.A. No. 04–5877 and Claim 1 in C.A. No. 05–1559 are **DISMISSED WITH PREJUDICE;**

2. Defendant Fiserv's Motions to Dismiss are **GRANTED** as to plaintiffs' claims under 70 P.S. § 1–306. Claim 2 in C.A. No. 04–5877 and Claim 2 in C.A. No. 05–1559 are **DISMISSED WITHOUT PREJUDICE** to plaintiffs' right to file an amended complaint with respect to these claims within twenty (20) days if warranted by the facts.

3. Defendant Fiserv's Motions to Dismiss are **GRANTED** as to plaintiffs' negligent supervision claims. Claim 4 in C.A. No. 04–5877 and Claim 4 in C.A. No. 05–1559 are **DISMISSED WITHOUT PREJUDICE** to plaintiffs' right to file an amended complaint with respect to these claims within twenty (20) days if warranted by the facts.

4. Defendant Fiserv's Motions to Dismiss are **DENIED** in all other respects.